[No. 5344.    Decided December 30, 1904.]

THE STATE OF WASHINGTON, *Respondent,* v. SAM EDER, *Appellant.*[1]

CRIMINAL LAW—EVIDENCE OF OTHER CRIMES—IMPEACHMENT OF WITNESS—ATTEMPT TO CORRECT INADVERENT STATEMENTS OF WIFE. It is reversible error to permit the state, upon cross-examination of the accused's wife, to show that the accused had been convicted of another crime some years before, and it is not a sufficient excuse that the same was shown to correct the statement that she had married the accused about the year 1898, at which time he was in prison, the same being an inadvertence, she having married him in 1899.

SAME—CREDIBILITY OF WITNESS—IMPEACHMENT OF WIFE OF ACCUSED BY FACT OF FORMER CONVICTION. It is not permissible, on the cross-examination of the accused's wife, for the state to show that the accused had been convicted of another crime some years before, and before their marriage, in order to affect the credibility of the wife, since the fact tends directly to prejudice the accused, and only remotely, if at all, to discredit the witness.

Appeal from a judgment of the superior court for Spokane county, Richardson, J., entered December 12, 1903, upon a trial and conviction of the crime of robbery. Reversed.

*Del Cary Smith* and *A. J. Laughon,* for appellant.

*Horace Kimball* and *R. M. Barnhart,* for respondent.

FULLERTON, C. J.—The appellant was convicted of the crime of robbery, and sentenced to a term of ten years in the state penitentiary. From the judgment of conviction and sentence, he appeals to this court.

The crime charged in the information was committed on the 4th day of April, 1903. After the state had closed its case, the appellant called as a witness one Florence Eder, who testified, in answer to questions put to her by

[1]Reported in 78 Pac. 1023.

counsel, that she was the wife of the appellant, and that the appellant was with her at Little Spokane, some 18 miles from the scene of the robbery, from the evening of the 2nd to the morning of the 5th or 6th of April, where he had been summoned at what was supposed to be the deathbed of his father. On cross-examination, the state was permitted to show by the witness that the appellant had been confined, for another crime, in the state penitentiary, some five or six years prior to the time of the crime charged in the information. This action of the court constitutes the first error assigned.

The state concedes that to admit evidence of a separate and distinct crime from that charged in the information is, in general, reversible error, but they seek to justify its admission in this instance on the principle that the evidence tended to impeach the witness, and contend that impeaching evidence is permissible, even though it does tend to connect the defendant with another and distinct crime. But without determining whether this contention would be true in any case, we are clear that it has no application here. The first question asked the witness on cross-examination was, "When were you married to this defendant?" To which the witness answered: "I don't remember exactly—about 1898;" while the fact was, as she testified subsequently, she was married in 1899. It was to correct this inadvertence on her part that the state was permitted to show by her that the defendant was confined in the state penitentiary in 1898; the argument being that, if he was so confined, she could not have lawfully married him at the time stated. But this did not justify a departure from the rule. In all the appellate courts, at the present day, evidence that the defendant has been guilty of a separate and distinct crime from that for which he is being tried, when offered for the purpose of

aiding the conviction of the defendant, is held inadmissible, and reversible error when admitted over proper objection.

The rule is founded in reason. The defendant comes to the trial prepared to meet only the crime with which he is accused, and he cannot, from the nature of things, be prepared to defend against other crimes that may be charged against him. Moreover, it is not the policy of the law to convict a man of one crime by showing that he has, at some time, been guilty of another. As testimony of the kind mentioned establishes the bad character of the defendant, its inevitable effect is to prejudice the minds of the jury against him, causing them to find him guilty of the crime charged on doubtful evidence, or evidence that would not otherwise produce a conviction. It violates, also, another well settled rule of criminal jurisprudence, namely, it permits the state to attack the character of the defendant when he does not himself put his character in issue.

The rule being thus founded in justice, it should not be departed from, except under conditions which clearly justify such a departure. There was no sufficient reason for the departure shown here. The answer of the witness was clearly an inadvertence, given without any possible purpose to deceive, and to correct her statement did not call for the admission of the objectionable evidence. Moreover, if correction was material at all, it could have been done in other ways than by bringing to the attention of the jury this particular fact.

It is said, however, that it affected the credibility of the witness to show that she had married a man who had been confined in the penitentiary; but this, again, is a consequence too remote to authorize the admission of objectionable evidence. While it is sometimes stated that

any circumstance which tends, in the remotest degree, to affect the credibility of a witness can be shown on cross-examination of such witness, yet the rule is not without exception. The fact shown must have a tendency to accomplish the purpose intended, and must not be something which of itself tends directly to prejudice the defendant in the minds of the jury. A defendant can be prejudiced, of course, by showing that his witness is unworthy of belief, but the state cannot, under the guise of impeaching a witness, show facts which tend directly to prejudice the defendant, but which only remotely, if at all, discredit the witness.

A further contention is that the evidence was insufficient to justify the verdict and that the cause should be reversed with instructions to discharge the appellant. But on this question we have no hesitancy in saying that the legitimate evidence makes a case for the determination of the jury.

The judgment is reversed, and the cause remanded for a new trial.

HADLEY, MOUNT, DUNBAR, and ANDERS, JJ., concur.